```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

John M. Keener,                  :

    Plaintiff,                 :

   v.                            : Case No. 2:15-cv-800

Commissioner of Social           : CHIEF JUDGE EDMUND A. SARGUS, JR.
Security,                          Magistrate Judge Kemp
                                 :
    Defendant.

REPORT AND RECOMMENDATION

I. Introduction

    Plaintiff, John M. Keener, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on January 20, 2012, and alleged that Plaintiff became disabled on December 29, 2011.

    After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on September 20, 2013. In a decision dated October 18, 2013, the ALJ denied benefits. That became the Commissioner's final decision on January 8, 2015, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on May 26, 2015. Plaintiff filed his statement of specific errors on June 29, 2015, to which the Commissioner responded on July 28, 2015. No reply brief has been filed, and the case is now ready to decide.

II. The Lay Testimony at the Administrative Hearing

    Plaintiff, who was 51 years old at the time of the administrative hearing and who is a high school graduate, testified as follows. His testimony appears at pages 56-75 of the administrative record.

Plaintiff first testified that he became disabled on December 29, 2011. He had been doing construction work and was having trouble completing work tasks due to pain; he and his doctor agreed on that date that he could not return to work. However, he also said he had been discharged for a safety violation prior to that date, and had done some seasonal work at Honda. Once he was laid off from that job, he decided not to go back.

In his spare time, Plaintiff worked in his garden and on a 1948 Ford which had been wrecked. He testified that he had problems with his hands, and said that when he had changed the brakes on his car the previous day it took him much longer than normal because he could not hold small objects. He had also experienced hand numbness while motorcycle riding.

Plaintiff typically saw a doctor once a month, but went more frequently if he was in pain. He denied problems with drugs or alcohol, but did admit to an OMVI in 2011 and said he might have been using cocaine at or around that time. He did ride a bike for exercise.

Asked why he could not work, Plaintiff said that the physical pain of either sitting in one spot, lifting, or spending too much time on his feet aggravated his physical and mental conditions. He was able to attend meetings several times per week and he planned to volunteer at hospice or the animal shelter. He described his pain as in the lower back, radiating down his right leg. Moving around or taking a hot bath helped with the pain. He also took six oxycodone pills per day and was taking Cymbalta as well. He had trouble sleeping due to pain and he would lie down for several hours during the day. He rated his pain as five or six on a scale of ten when he went to bed, and lower in the morning.

As far as activity, Plaintiff said he could sit for half an

hour, stand for about the same period of time, and walk seven or eight blocks without stopping. He could not make it through a work day without having to lie down. It hurt his back to lift thirty pounds. Plaintiff could stoop but not bend over and climb a flight of stairs. He was depressed over the fact that he could no longer do things the way he was used to doing.

### III. The Medical Records

The medical records in this case are found beginning on page 229 of the administrative record. The Court will summarize the pertinent medical records as well as the opinions of the state agency reviewers. The summary will be limited to the records of psychological evaluation and treatment because Plaintiff's statement of errors raises no issues as to his physical residual functional capacity.

Chronologically, the first record of a psychological evaluation is the report of Dr. White, a clinical psychologist, who performed a consultative examination on May 9, 2012. Plaintiff reported both physical symptoms and symptoms of depression. He was taking some medication for depressive symptoms. Activities of daily living included taking care of his personal needs, watching television, preparing meals, helping with household chores, and socializing with family members. His speech was coherent and relevant and his affect was saddened and tearful. He reported fatigue, weight gain, feelings of worthlessness and guilt, feelings of helplessness and hopelessness, crying spells, occasional irritability with others, and some symptoms of anxiety. An adjustment disorder with depressed mood was diagnosed and Plaintiff's GAF was rated at 61. Dr. White thought Plaintiff had no problems following instructions in the work setting, no limitations in his ability to maintain attention and concentration, no problems getting along with others, and a mild impairment in the ability to cope

with work stress.  (Tr. 446-51).

Dr. Miller was the treating psychologist.  His notes document treatment beginning June 4, 2012.  Plaintiff was a self-referral.  On that date, he reported some difficulties with bankruptcy and foreclosure as well as prescription drug abuse, but said his depression had improved recently.  Dr. Miller diagnosed major depressive disorder, recurrent, moderate.  Subsequent notes showed that he remained about the same but reported some difficulty motivating himself and frustration with legal proceedings.  A note from November 13, 2012, shows that he was feeling more motivated and less depressed, and similar observations were made on February 12, 2013.  However, Dr. Miller reported to another of Plaintiff's doctors, Dr. Abad, on January 8, 2013, that Plaintiff "struggles with depression and has not responded well to treatment."  But a note from February 19, 2013, showed that antidepressant medication was helpful.  The notes also show some relapses in Plaintiff's recovery from substance abuse.  (Tr. 626-39).  A subsequent letter described Plaintiff as being "severely depressed."  (Tr. 771).  Dr. Miller then filled out a residual functional capacity report stating that Plaintiff had four marked and two extreme limitations, one of which was in the area of completing a normal workday or work week without interruption from psychologically-based symptoms.  (Tr. 767).  On that same form, he checked a box indicating that these symptoms were expected to last between 8 and 11 months; he had the option to indicate that the limitations would last 12 months or more, but he did not choose that option.

The record was reviewed by two state agency psychologists.  Both concluded that Plaintiff did not have a severe mental impairment.  (Tr. 97, 112).

IV.   The Medical Expert Testimony

Dr. Ronald Kendrick, a board certified orthopedic surgeon,

-4-

was the testifying medical expert. His testimony begins on page 76 of the record.

After having reviewed the medical file, Dr. Kendrick said that Plaintiff suffered from degenerative lumbar disc disease with foraminal stenosis and a similar problem in the cervical spine, primarily at C4-C6. Dr. Kendrick did not address any psychological impairments.

When asked about functional limitations, Dr. Kendrick responded that, in his opinion, Plaintiff could lift 20 pounds occasionally and ten pounds or less frequently; could stand and walk for only an hour at a time, but for up to six hours in a workday; could sit for only 45 minutes at a time, but also up to six hours in workday; could occasionally bend, stoop, kneel, and crawl; and should not work around heavy equipment or in high places, or climb ladders.

In response to questions from Plaintiff's counsel, Dr. Kendrick said that the record did not show any motor loss or muscle weakness. There was an indication of a numb spot on the leg, but Dr. Kendrick did not think that would cause any functional limitation.

V. The Vocational Testimony

Eric Pruitt was the vocational expert in this case. His testimony begins on page 82 of the administrative record.

First, Mr. Pruitt was asked to characterize Plaintiff's past relevant work. He said that the only past work was as a structural steel worker, and that was a heavy, skilled occupation.

Next, Mr. Pruitt was asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level, but who could only occasionally stoop, crouch, and crawl. The person also could not use hazardous machinery or be exposed to

unprotected heights.  Such a person could not, in Mr. Pruitt's opinion, do Plaintiff's past work, but he or she could work as a buffing machine tender, a packing machine tender, and a laundry press operator.  If the person also could only occasionally push and pull, could frequently climb ramps and stairs, could not climb ladders, ropes, or scaffolds, could only occasionally stoop, kneel crouch, crawl, or reach overhead, and could frequently handle and finger, the person could do those same jobs.

Mr. Pruitt was then asked if a person who had to take four fifteen-minute unscheduled breaks or to be off task 15% of the time could do any of those jobs, or any other jobs.  He did not think so.  The same would be true for someone who needed to have his or her work checked frequently.  Additionally, someone who could only occasionally use the hands for grasping or handling could not do the jobs Mr. Pruitt identified, but that person could still do a number of light, unskilled jobs such as furniture rental clerk, conveyor line bakery worker, or blending tank tender.  Cumulatively, the jobs such a person could do numbered 840 in the regional economy, 6,774 in the state economy, and 185,671 in the national economy.

V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 37-47 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  Second, he found that Plaintiff had not engaged in substantial gainful activity since his onset date of December 29, 2011.

Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including degenerative disease of his cervical and lumbosacral

spine, thoracic spine anterior wedge deformity, and osteoarthritis of the left knee. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to work at the light exertional level except that he could only occasionally stoop, crouch, or crawl, and could not use heavy equipment or be exposed to unprotected heights.

The ALJ found that, with these restrictions, Plaintiff could not do any of his past relevant work. However, he could do the three light jobs identified by the vocational expert - buffing machine tender, tacking machine tender, and laundry press operator. Alternatively, the ALJ determined that, if Plaintiff had additional physical limitations as described to the vocational expert, he could work as a furniture rental clerk, on a bakery line conveyor, or as a blending tank tender. The ALJ further found that these jobs existed in significant numbers in the regional, State, and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises two issues. He asserts that (1) the ALJ improperly rejected the opinion of Dr. Miller, a treating source; and (2) the ALJ erred when he found that Plaintiff's depression was not a severe impairment. These issues are considered under the following legal standard. They are also related, and the Court will discuss them both together.

<u>Standard of Review</u>. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is

"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff contends that the ALJ did not properly evaluate the opinion of Dr. Miller, the treating psychologist, neither crediting his opinion properly nor articulating the basis for his decision.  In order to assess this claim, the Court begins by reviewing in some detail what the ALJ said about that opinion.

The ALJ addressed Dr. Miller's opinion in his discussion of whether Plaintiff had a severe psychological impairment.  He first noted Dr. White's evaluation, which supported a finding that Plaintiff's depression did not cause more than minimal limitations on his functional ability, and also observed that the state agency reviewers reached the same conclusion.  As to Dr. Miller, the ALJ said this (with his reference to the exhibits omitted):

-8-

> In June, 2012, psychologist Cecil Miller, Ph.D., observed that the claimant was a "generally healthy man" with good grooming and hygiene, appropriate eye contact, good social skills, and normal intellectual functioning. The claimant continued to receive outpatient mental health treatment and indicated that his mental symptomatology was caused or aggravated by marital difficulties and bankruptcy. In July 2013 Dr. Miller reported several moderate, marked and extreme mental work-related limitations but indicated they would last less than a year. Furthermore, the claimant's actual activities of living, as summarized, do not support a finding of more than mild mental work-related limitations.

(Tr. 41).

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision.

Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Evaluating a treating source opinion involves a series of steps. The first is to decide whether to give that opinion controlling weight. It is not entitled to such weight if "not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Social Security Ruling (SSR) 96-2p. However, if the ALJ declines to give a treating source opinion controlling weight on this basis, he or she must explain why in terms other than simply repeating the words of the regulation. As the Court of Appeals said in Gayheart v. Comm'r of Social Security, 710 F.3d 365, 377 (6th Cir. 2013), "[t]he failure to provide 'good reasons' for not giving [a treating source's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." In Gayheart, the court found that a conclusory statement that the treating source opinion was not well-supported by objective findings was too ambiguous to satisfy the ALJ's duty to articulate the reasons for his or her findings, and also held that the failure to identify the evidence which was inconsistent with the treating source opinion – apart from a reference to non-treating or non-examining doctors – was insufficient as well. As the Gayheart court also observed, "[s]urely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." Id. Finally, that court held that it is error to proceed to the second step of the process – determining what weight to give the treating source opinion using the various factors listed in §404.1527(c) – until the ALJ has properly

-10-

explained why the opinion was not entitled to controlling weight.

The ALJ clearly did not follow this analytical path, at least in expressing his analysis in the administrative decision. In the only section in which he discusses Dr. Miller's opinion, which is the section devoted to what Plaintiff's severe impairments are, the ALJ does not cite to the controlling regulation or acknowledge Dr. Miller to be a treating source.  He does not make any determination about whether Dr. Miller's opinion is, or is not, supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.  He does not explain what weight he gave to Dr. Miller's opinion (which, if taken at face value, would support a finding of disability) on the question of whether Plaintiff's psychological impairments were severe.  In short, his analysis of Dr. Miller's opinion - which is not referred to at all in the section of the decision in which the ALJ determines Plaintiff's residual functional capacity - is simply insufficient.

What the ALJ appears to have done is to disregard Dr. Miller's opinion on the basis of contrary conclusions reached by Dr. White, the consultative examiner, and the two state agency reviewers.  That evidence, by itself, is insufficient under <u>Gayheart</u> to justify the total disregard of a treating source opinion.  The only other explanation provided by the ALJ - apart from the fact that Dr. Miller thought the limitations he identified would persist for another 8-11 months beyond the date of his report, which, as Plaintiff points out, came after he had been treating Plaintiff for a number of months - is the statement that Plaintiff's activities of daily living did not support a finding of more than mild mental limitations.

The only summary provided by the ALJ of Plaintiff's daily activities is the one found in Dr. White's report.  Plaintiff told Dr. White that he could live independently, watch

television, socialize with his family, and help with household chores. Perhaps such activities are inconsistent with total disability, but they say little to nothing about whether Plaintiff had some limitations in his ability to function in a workplace - even a stressful or fast-paced one - which would be more than a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." Farris v. Secretary of H.H.S., 773 F.2d 85, 90 (6th Cir. 1985), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). It is important to remember that the severe impairment requirement is only a threshold issue, and that there is a significant difference between establishing the presence of an impairment which imposes more than a minimal effect on someone's ability to work and one which disables that person.

In short, the ALJ's failure to acknowledge Dr. Miller as a treating source, to apply the analytical method set out in §404.1527(c), to explain his conclusions, and to provide good reasons for his complete rejection of Dr. Miller's opinion - according it so little weight that it did not support the existence of a severe, let alone disabling, impairment - is a clear legal error. The error is not harmless; no psychological restrictions were found, and none were described to the vocational expert, so it is impossible to determine, based on this record, if someone who had some degree of psychological limitation could do the jobs identified by Mr. Pruitt. Cf. Serban v. Comm'r of Social Security, 2015 WL 5965393, *4 (S.D. Ohio Oct. 13, 2015)("any error in not finding a particular impairment to be severe is rendered harmless by the ALJ's later consideration of the effects of that impairment ..."). Consequently, the case should be remanded for a proper evaluation both of Dr. Miller's opinion and the question of whether

Plaintiff has a severe psychological impairment.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained and that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge